UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| SAMSON OFFSHORE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-CV-0109-CVE-TLW |
| CHEVRON U.S.A., Inc., | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is the Motion of Defendant Chevron U.S.A. Inc. to Dismiss, Transfer or Stay Proceedings and Memorandum in Support Thereof (Dkt. # 24). Defendant Chevron U.S.A., Inc. (Chevron) asks the Court to dismiss this case for improper venue or transfer the case to the United States District Court for the Southern District of Texas, because the parties agreed to a dispute resolution procedure requiring that all disputes arising under the parties' contractual agreements be submitted to arbitration or be heard by a court in Houston, Texas. Plaintiff Samson Offshore Company (Samson) claims that the parties' dispute does not arise under the parties' written agreements and falls within in an exception to the dispute resolution procedure, and that Samson has the right to seek a declaratory judgment and interim injunctive relief in this Court.[1]

---

[1] Plaintiff requests leave to file a sur-reply in opposition to defendant's motion. Dkt. # 29. The Court has reviewed defendant's reply and finds that defendant has not raised a new argument or cited new evidence in its reply. Thus, it would not be necessary or helpful to permit plaintiff to file a sur-reply, and plaintiff's motion for leave to file a sur-reply should be denied.

**I.**

On June 1, 2009, Chevron and BP Exploration and Production, Inc. executed the Moccasin Operating Agreement (Operating Agreement) governing the parties' rights relating to the "exploration, appraisal, operation, production, treatment, gathering, and storage of Hydrocarbons."[2] Dkt. # 24-3, at 11. The Operating Agreement designates Chevron as the operator with the exclusive right to conduct activities under the Operating Agreement, and allows the operator to "contract for and employ any drilling rigs, tools, machinery, equipment, materials, supplies, and personnel reasonably necessary for the Operator to conduct the activities or operations . . . ." Id. at 29. Thereafter, Chevron and Samson executed a Well Participation Agreement, which incorporated the provisions of the Operating Agreement and in which, inter alia, Samson agreed to pay 25 percent of the well costs for operations in the "Moccasin Prospect Area."[3] Dkt. # 24-2, at 6. The Well Participation Agreement states that Moccasin Prospect Area is "located in the Keathley Canyon area of Deepwater Gulf of Mexico, U.S.A." Id. at 1.

The Operating Agreement includes a detailed dispute resolution procedure that requires mediation and arbitration of all "disputes."[4] "Dispute" is defined as "any dispute or controversy

---

[2] The Operating Agreement defines "Hydrocarbons" as "oil, gas, and associated liquid and gaseous by-products (except helium) that are or may be produced from a well bore on the Contract Area." Dkt. # 24-3, at 17.

[3] The Well Participation Agreement incorporates all terms of the Operating Agreement unless those terms are specifically modified in the Well Participation Agreement. Dkt. # 24-2, at 4.

[4] The Well Participation Agreement also separately provides that "[a]ny Dispute arising out of, relating to, or in connection with this Agreement or an activity or operation conducted under this Agreement shall be resolved under the Dispute Resolution Procedure in the [Operating Agreement]." Dkt. # 24-2, at 11. Thus, any dispute arising out of the Operating Agreement or the Well Participation Agreement is governed by the dispute resolution procedure.

2

arising out of the [Operating] Agreement or the performance of any operations under the Agreement, including a Claim under this Agreement and any dispute or controversy regarding the existence, construction, validity, interpretation, enforceability or breach of this Agreement . . . ." Dkt. # 24-8, at 1. A party initiating a dispute is first required to give the other party notice of the dispute in writing and the parties must attempt to resolve the dispute through direct negotiations within 30 days from the date notice was sent. Id. If direct negotiation is unsuccessful, either party may initiate mediation and the parties agreed to mediate in Houston, Texas. Id. at 2. The parties agreed to submit any unresolved disputes to binding arbitration in Houston if direct negotiation and mediation were unsuccessful. Id. The arbitrator shall have the authority to "rule on objections concerning jurisdiction, including or validity of this arbitration clause and the existence or the validity of this Agreement." Id. at 2. While any dispute is pending, "each party shall continue to perform its obligations under the Agreement, unless to do so would be impossible or impracticable under the circumstances." Id. at 1. The dispute resolution agreement includes a "mandatory exclusive venue" provision stating:

> Except for proceedings to preserve Property pending determination by the arbitrator or arbitrators or to enforce an award, the mandatory exclusive venue for any judicial proceeding permitted in this Agreement is the court of competent jurisdiction in Houston, Texas. The parties consent to the jurisdiction of these courts and waive any defenses they have regarding jurisdiction.

Id. at 3. "Property" is defined in the Well Participation Agreement as "property owned, leased or furnished by that Person or in which that Person has an economic interest." Dkt. # 24-2, at 4.

Chevron leased from a third party a drillship named Discoverer Inspiration, and used this drillship to conduct exploratory drilling in the Moccasin Prospect Area. Dkt. # 2, at 3; Dkt. # 24, at 10. However, in April 2010, a massive oil spill occurred in the Gulf of Mexico and the United

States government ordered a moratorium on drilling in the Gulf of Mexico in May 2010. Chevron pulled the Discoverer Inspiration from drilling projects in the Moccasin Prospect Area and informed Samson that it would be responsible for its percentage of charges incurred to store the drillship. Dkt. # 2, at 8. These charges are substantial and Samson disputes that it is contractually obligated to pay any portion of the expenses incurred by Chevron to keep the Discoverer Inspiration on standby status. Id. at 8-12. In particular, Samson argues that neither the Operating Agreement nor the Well Participation Agreement obligates Chevron to designate the Discoverer Inspiration to a well in the Moccasin Prospect Area, and that Chevron has no contractual authority to bill Samson for the storage of the Discoverer Inspiration when Chevron is free to use the drillship for other projects. Id.

Samson filed this case on February 22, 2011, seeking a declaratory judgment that "Chevron has no right to demand or require payment from Samson for Chevron's payments for the [Discoverer] Inspiration or Chevron's 'miscellaneous' charges, for any day after Chevron demobilized and removed the [Discoverer] Inspiration" from the Moccasin Prospect Area. Dkt. # 2, at 15. Samson specifically seeks a declaration that "such charges by Chevron are not authorized by or provided for in the [Well Participation Agreement] . . . and are unrelated to any obligation undertaken by Samson in any agreement between Samson and Chevron." Id. Samson also requested a preliminary injunction to maintain the status quo ante if Chevron elected to enforce the parties' arbitration agreement. Id. On March 16, 2011, Samson filed a motion for preliminary injunction (Dkt. # 19) and a motion to conduct limited discovery (Dkt. # 20) in support of its motion for preliminary injunction. The Court initially granted Samson's motion for limited discovery and set the motion for preliminary injunction for hearing. Dkt. # 22. However, Chevron filed a motion

to dismiss for improper venue or to transfer venue to the Southern District of Texas (Dkt. # 24).[5] On March 15, 2011, Chevron filed its own case in the Southern District of Texas to compel arbitration of Samson's claims concerning payment of expenses related to the Discoverer Inspiration.[6] Dkt. # 24-6. Chevron also seeks attorney fees and costs associated with litigating this case, because Samson violated the parties' dispute resolution procedure by filing a lawsuit in this Court. Dkt. # 24, at 16-17.

---

[5] In the alternative, Chevron asks the Court to stay this case pending arbitration, but it is not necessary for the Court to reach this issue. See Dkt. # 24, at 18-20.

[6] Plaintiff asks the Court to apply the "first-filed" rule and assume jurisdiction over the entire dispute without deferring to the case filed by Chevron in the Southern District of Texas. Dkt. # 27, at 28. "The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965). However, the first-filed rule is not mandatory and, instead, is a general rule of deference in cases involving overlapping parties and issues. See Cherokee Nation v. Nash, 724 F. Supp. 2d 1159, 1166 (N.D. Okla. Jul. 2, 2010); see also O'Hare Int'l Bank v. Lambert, 459 F.2d 328, 331 (10th Cir. 1972) ("The rule of comity is a self-imposed restraint upon an authority actually possessed. The abstention doctrine is not an automatic rule; it rather involves a discretionary exercise of the court's equity powers where there exist special circumstances prerequisite to its application on a case-by-case basis."). It would be inappropriate to apply the "first-filed" rule in this case. As will be discussed below, Chevron has not waived its right to compel arbitration in Houston and only the Southern District of Texas has the authority to compel arbitration in the parties' selected forum. Strict application of the "first-filed" rule would allow plaintiff to avoid application of the parties' dispute resolution procedure merely by filing this case first, and the Court exercises its discretion to defer to the forum selected by the parties if Chevron shows that dismissal or transfer of venue is appropriate.

5

**II.**

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."[7] Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir. 1992). On a Rule 12(b)(3) motion, the Court may consider matters outside the pleadings, and facts alleged in the complaint are taken as true to the extent that they are uncontroverted by defendant's evidence. See Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc., 2010 WL 582205, *3 (N.D. Okla. Feb. 10, 2010); see also Sucampo Pharms., Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008). The Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

**III.**

Defendant argues that this case should be dismissed or transferred to the Southern District of Texas to compel arbitration in the parties' selected forum, because the parties agreed to arbitrate disputes arising under the Well Participation Agreement in Houston and only the Southern District

---

[7] The Court notes that the parties' dispute resolution procedure contains a venue selection clause and designates a forum for arbitration. Defendant's arguments as to the location of arbitration and the venue selection clause both go to the issue of proper venue and Rule 12(b)(3) is the most appropriate subsection of Rule 12 under which to analyzed defendant's motion.

of Texas has jurisdiction to compel arbitration in Houston.[8] Dkt. # 24, at 11-18. Plaintiff responds that the parties' arbitration and venue selection provisions are inapplicable because defendant's demand for payment falls outside of the Well Participation Agreement, and this Court should hear plaintiff's request for interim relief. Dkt. # 27, at 7.

The parties agreed to a detailed dispute resolution procedure requiring arbitration of any "dispute or controversy arising out of the Agreement or the performance of any operations under the Agreement . . . ." Dkt. # 24-8, at 1. The parties also agreed that any arbitration would take place in Houston. Id. at 2. To the extent that any dispute did not fall within the arbitration agreement or the parties waived arbitration, the parties agreed to bring any judicial action in a "court of competent jurisdiction in Houston, Texas." Id. at 3. The clear intent of the parties' dispute resolution procedure is to resolve any dispute, whether by arbitration or in the courts, in Houston. Defendant has not waived its right to arbitrate this dispute in the forum selected by the parties, and this Court lacks jurisdiction to compel arbitration in Houston. Ansari v. Qwest Communictions Corp., 414 F.3d 1214, 1219-20 (10th Cir. 2005) ("where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under [9 U.S.C. § 4]); Global Client Solutions, LLC v. Fluid Trade, Inc., 2010 WL 2690373, *7 (N.D. Okla. July 1, 2010) ("When an arbitration agreement includes a forum selection clause, only a federal district court within the specified forum may issue an order compelling arbitration."). The Court also notes that the parties

---

[8] The Tenth Circuit has directed district courts to consider whether a case should be transferred or dismissed when a defendant moves to dismiss for improper venue. Trujillo v. Williams, 465 F.3d 1210, 1223 (10th Cir. 2006). Under the circumstances, the Court finds that transferring the case to the appropriate forum is preferable to dismissal, because there is a related case pending in the Southern District of Texas and that court has the authority to compel arbitration if necessary.

agreed that the arbitrator has the power to rule on "objections concerning jurisdiction, Dkt. # 24-8, at 2, and it appears that an arbitrator, not a court, must determine if the parties' dispute falls within the arbitration agreement.[9] See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); Burlington Northern and Santa Fe Ry. Co. v. Public Service Co. of Oklahoma, ___ F.3d ___, 2010 WL 5023257 (10th Cir. Dec. 10, 2010); Bowen v. Amoco Pipeline Co., 254 F.3d 925, 934 (10th Cir. 2001). This further supports defendant's request to dismiss this case or transfer venue to the Southern District of Texas.

Plaintiff was clearly aware of the dispute resolution procedure when it filed this case and, even in the complaint, plaintiff attempts to characterize this dispute as outside of the parties' dispute resolution procedure. In the complaint, "Samson acknowledges that the [Well Participation Agreement] contains an arbitration provision, but Samson denies that Chevron's actions described herein fall within that arbitration provision." Dkt. # 2, at 15. Even if the Court were to find that this dispute should be arbitrated, plaintiff asks the Court to enter a preliminary injunction to preserve the status quo pending the completion of arbitration. Id. at 16. Plaintiff cites an exception to the mandatory venue clause and states that plaintiff has the right to bring judicial action in any forum to "preserve its property." Id.

Plaintiff's primary argument is that the parties' billing dispute falls outside of the parties' contractual agreements, because neither the Operating Agreement nor the Well Participation Agreement authorizes Chevron to bill plaintiff for storage of the Discoverer Inspiration while it is not in use in the Moccasin Prospect Area. Dkt. # 27, at 10-16. Based on this assumption, plaintiff

---

[9] The Court cites this aspect of the parties' agreement only to the extent that it supports the Court's decision to transfer this case to the Southern District of Texas, and makes no finding concerning who decides issues of arbitrability under the agreement.

8

claims that the arbitration provision does not apply and it should be permitted to pursue interim relief in this Court. However, plaintiff's argument suffers from an obvious defect. To determine if Chevron is authorized to bill plaintiff for expenses associated with storing and maintaining the Discoverer Inspiration, the Court would be required to interpret the relevant contractual language. Monetary disputes requiring interpretation of the Operating Agreement or the Well Participation Agreement fall within the parties' broad arbitration agreement. Plaintiff also impliedly acknowledges that the dispute requires interpretation of the parties' written agreements, because plaintiff refers to Chevron's billing related to the Discoverer Inspiration as an "abusive interpretation" of the agreements. Id. at 8. The Court takes no position on whether plaintiff is required to submit its dispute to arbitration but, at a minimum, Chevron has made a colorable showing that this dispute falls within the parties' arbitration agreement.[10] As noted, the parties agreed that arbitration would take place in Houston and only the Southern District of Texas has the authority to compel arbitration in Houston.

Even if the Court were to assume that the arbitration agreement did not apply, the parties also agreed to a mandatory venue provision selecting a "court of competent jurisdiction in Houston, Texas" as the appropriate forum for any judicial action. Dkt. # 24-8, at 3. Plaintiff argues that there is an exception to the mandatory venue provision and the exception is applicable to plaintiff's claims against Chevron. Dkt. # 27, at 16-22. The mandatory venue provision does not apply to claims to "preserve Property pending determination by the arbitrator or arbitrators or to enforce an award."

---

[10] To the extent that plaintiff's opposition to defendant's motion to transfer argues that the parties' dispute is not arbitrable, this Court does not reach that issue.

Dkt. # 24-8, at 3. Plaintiff argues that this is a "proceeding to preserve Property," because Texas law

treats contractual rights as property and Chevron is interfering with various contractual rights owed to plaintiff by Chevron.[11] Dkt. # 27, at 17-19.

A forum selection clause is presumed to be valid and the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992). The party resisting enforcement of a forum selection provision "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992). The Tenth Circuit has found that forum selection clauses fall into two general categories - mandatory or permissive. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997). A mandatory forum selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum." Id. (quoting Thompson v. Founders Group Int'l, 886 P.2d 904, 910 (Kan. Ct. App. 1994). A permissive forum selection clause permits suit to be brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. SBKC Serv. Corp. v. 1111 Prospect Partners, L.P., 105 F.3d 578, 581-82 (10th Cir. 1997).

---

[11] Plaintiff's argument in this respect also relies heavily on the Operating Agreement and the Well Participation Agreement, which suggests that the parties' dispute does not fall wholly outside of the parties' agreements as plaintiff argues elsewhere. See Dkt. # 27, at 7-16.

10

The Court finds that plaintiff should have filed this case in the Southern District of Texas or another "court of competent jurisdiction" in Houston, regardless of the arbitrability of the parties' dispute, because the parties' dispute resolution procedure contains a mandatory venue provision that is applicable to plaintiff's claims. Plaintiff's proposed interpretation of the venue provision renders it meaningless, because every contractual dispute would affect a party's property interest and would fall outside of the venue provision. The most reasonable interpretation of the venue provision exception is as a limited exception for disputes involving "property" as that term is defined in the Well Participation Agreement, and to find that the parties intended to litigate in Houston all "disputes" not covered by the arbitration agreement or as to which arbitration was waived.

Finally, plaintiff argues that this Court has jurisdiction to hear plaintiff's motion for preliminary injunction, even if the case is later submitted to arbitration, because a federal court has the authority to issue orders to maintain the status quo when there is a dispute as to the arbitrability of claims. Dkt. # 27, at 22-29. The Court agrees with plaintiff to the extent that a federal district court may have an obligation to hear a motion for preliminary injunction pending arbitration. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726 (10th Cir. 1988); Advanced Technology Assoc., Inc. v. Seligman, 1997 WL 756604 (D. Kan. Nov. 18, 1997); NOS Communications, Inc. v. Robertson, 936 F. Supp. 761 (D. Colo. 1996). However, plaintiff has filed this case in the improper federal district court and it appears that plaintiff is blatantly attempting to circumvent the dispute resolution procedure agreed upon by the parties. Plaintiff may seek injunctive relief from the Southern District of Texas following transfer of venue to that court, but

the authority cited by plaintiff does not support plaintiff's request for this Court to hear plaintiff's motion for preliminary injunction.[12]

The Court finds that this case should be transferred to the Southern District of Texas for further proceedings, because the parties selected Houston as the appropriate forum for arbitration and Chevron has not waived its right to compel arbitration in Houston.[13] See Sinclair Broadcast Group, Inc. v. Interep Nat'l Radio Sales, Inc., 2005 WL 1000086 (D. Md. Apr. 28, 2005) (transferring case to Southern District of New York when parties agreed to arbitration in New York); Optopics Laboratories Corp., v. Nicholas, 947 F. Supp. 817 (D.N.J. 1996) (transferring venue to a district court authorized to compel arbitration). Even if the dispute does not fall within the parties' arbitration agreement, the parties also agreed that any judicial proceedings would be brought in Houston and the Court would be required to transfer the case under the mandatory venue provision. The Court transfers venue of this case pursuant to 28 U.S.C. § 1406, rather than 28 U.S.C. § 1404, because plaintiff filed this case in a court without authority to compel arbitration and plaintiff was aware of the parties' agreement to submit any contractual dispute to binding arbitration in Houston. Viets v. Andersen, 2003 WL 21525062, *10 (S.D. Ind. June 26, 2003); Horizon Plastics, Inc. v. Constance, 2000 WL 1176543, *4 (D.N.J. Aug. 11, 2000).

---

[12] Plaintiff's motion for preliminary injunction (Dkt. # 19) will remain pending following transfer of this case to the Southern District of Texas.

[13] Chevron argues that it is entitled to attorney fees incurred to enforce the parties' dispute resolution procedure. Dkt. # 24, at 18. The dispute resolution procedure does authorize an award of attorney fees against a party who improperly files a lawsuit. Dkt. # 24-8, at 1 ("A Party who violates the terms of this Exhibit shall pay all legal and consulting fees and costs incurred by the other Party in any suit, action, or proceeding to enforce it."). Chevron's right to attorney fees is governed by the parties' written agreements and should be resolved by the appropriate court specified in the parties' dispute resolution procedure.

**IT IS THEREFORE ORDERED** that the Motion of Defendant Chevron U.S.A. Inc. to Dismiss, Transfer or Stay Proceedings and Memorandum in Support Thereof (Dkt. # 24) is **granted**, and Plaintiff Samson Offshore Company's Motion for Leave to File Sur-Reply in Opposition to Chevron's Motion to Dismiss or Transfer or to Stay Proceedings (Dkt. # 29) is **denied**.

**IT IS FURTHER ORDERED** that the Court Clerk is directed to transfer this case to the United States District Court for the Southern District of Texas.

**DATED** this 30th day of March, 2011.

_Claire V. Eagan_
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT